*366 SHEPARD, Chief Justice,
dissenting.
My colleagues have declared that a rather ordinary police inquiry on the sidewalks of Noblesville constituted a violation of the Fourth Amendment. While this declaration rescues Sarah Sellmer from the erimi-nal sanctions that would otherwise flow from her transporting around a large amount of marijuana (this is not a case of someone caught smoking a joint in a dorm room), I am more concerned about its long-term effect.
The majority says in questioning Ms. Sellmer out on the walk in a tony business district the police stepped over six. different constitutional lines. One may hope that resting today's decision on six differentiated violations might cabin in the damage done to standard law enforcement inquiries, but I would say that only about three of these six declared violations pack much punch: (1) the officer asked for permission several times, (2) he told her he was there because she was under suspicion, and, my friends say, (8) he told her she could leave only if permission was granted.
As to the first of these, that an officer asks permission multiple times might well be characterized as making it plain to Sellmer that a search could occur only if she agreed. The majority has elected to characterize it instead as a form of coercion.
Second, as for the Court's decision to declare that telling Sellmer she was under suspicion for carrying drugs, an appellate court that elects to treat such statements as a form of pressure must accept that law enforcement officers will reasonably understand that the courts wish them to be less candid with people they interview.
And, third, as for whether Officer Roberts told Sellmer she could depart only if she consented, the treatment my colleagues give to the actual evidence before the trial court reflects a review based on selection of those facts unfavorable to the trial court's ruling. It is not our declared standard of review.
There were three descriptions before the trial court (all from Officer Roberts, none from Sellmer). The majority rests on the proposition that Officer Roberts told Sellmer he would " 'allow [her] to go" ' once he completed the search. Opin. at 364. They say this meant she was restrained or "seized" to use the language of the Constitution.
Whether this is what he told her or not depends on which version of this conversation one chooses to credit. To be sure, one version tends to support the majority's holding. Others do not.
Here are those several versions. At one point, the officer testified:
And I told her if in fact she allowed me to search the vehicle and I found nothing, I would thank her for her time and appreciate her cooperation and I would allow her to go on her way with, you know, nothing else done. That I would leave and go on my way.
(Tr. at 24.)
The version propounded by the defense was different. During cross-examination, Roberts agreed with defense counsel's assertion that it happened this way:
"Well, if you have nothing to hide, let me look in your car, and when I found out whether that's true or not true, I'll be on my way and it will be in your best interest to cooperate with me."
(Tr. at 47.) The meaning of this version is at best ambiguous.
Reviewing this evidence and more, Judge Richard Campbell noted that the U.S. Supreme Court had recently observed that the police in a traffic stop need not tell the driver that he is "free to go" before *367 his consent to search will be recognized as voluntary, Ohio v. Robinette, 519 U.S. 33, 38-40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). Judge Campbell held that "most of the objective cireumstances indicated that the Defendant was never in the care and control of the police." (Appellants' App. at 16-Order on Motion to Suppress.)
The reason today's decision may have substantial implications for future motions to dismiss is that the majority has elected not to credit the testimony the trial judge obviously found most compelling, the testimony embraced by the defense. It chooses instead to order suppression by crediting the version favorable to suppression.
Ironically, the Court relies on the decision in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There, Chief Justice Warren spoke for eight members of the Court in holding that an officer who manually seized a suspect (apparently on the basis that the suspect mumbled the answer to a question), and then frisked the suspect's body, was warranted in so doing because the officer had observed the suspect and others walking past department store windows. That was the only evidence supporting the seizure. "It would have been poor police work indeed," said Earl Warren, to do anything else. Id. at 23, 88 S.Ct. 1868. That policeman's hunch and some mumbling constituted "articula-ble suspicion" according to Chief Justice Warren, adequate under the Fourth Amendment. Judge Campbell's ruling is altogether consistent with Terry and should be affirmed.
DICKSON, J., joing.